A06A1737. WACHOVIA BANK, N.A. v. THE MOODY BIBLE INSTITUTE OF CHICAGO, INC.
A06A1738. FERRIS v. THE MOODY BIBLE INSTITUTE OF CHICAGO, INC.
(642 SE2d 118)

MILLER, Judge.

Robert H. Ferris brought this action against The Moody Bible Institute of Chicago, Inc. ("Moody") and Wachovia Bank, N.A. ("Wachovia"), in its capacity as executor of the estate of Ruth H. Ferris and trustee of the Ruth H. Ferris Revocable Trust, asserting claims for breach of fiduciary duty, conversion, and punitive damages, and seeking attorney fees and various forms of equitable relief. Wachovia filed a cross-claim against Moody for conversion, attorney fees, indemnification, and contribution. Moody filed motions for summary judgment on all claims asserted against it, which the trial court granted.

In Case Nos. A06A1737 and A06A1738, Ferris and Wachovia have filed identical appeals of the summary judgment order, asserting that the trial court's findings constituted legal error. We agree and reverse.

On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to judgment as a matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998).

So viewed, the evidence shows that in August 1999, Ms. Ferris executed a revocable Trust Agreement (the "Moody Trust") in which she transferred a significant portion of her assets to Moody. Moody was both the trustee and the ultimate beneficiary of this trust.

On June 15, 2000, Ms. Ferris sent a letter to Carolyn Johnson, a Senior Investment Advisor at Moody (the "First Revocation") requesting "the cancellation of my revocable Trust #55587, dated August 28, 1999, with an approximate value of $550,000.00" and asking that Moody "sell the securities and send me a check for the proceeds." Ms. Johnson's notes state that she received the First Revocation on June 20, 2000, and that she talked with Ms. Ferris by phone the following day. The notes reflect that during their conversation, Ms. Ferris indicated that she no longer wished to revoke the Trust. Ms. Johnson's August 7, 2000 notes state that she had received another call from Ms. Ferris requesting return of the Trust funds, but that she had refused this request, telling Ms. Ferris that this was the wrong decision.

On January 17, 2001, Ms. Johnson sent Ms. Ferris a letter stating that she had spoken with Elizabeth Brown, Moody's Assistant General Counsel, regarding Ms. Ferris' "request to have your Revocable Trust Agreement terminated and have the assets returned to you" and that "Mrs. Brown said that for us to transfer the assets back to you, you need to have either a [new] Last Will and Testament or a Trust Agreement in affect [sic]." Apparently in response to this letter, Ms. Ferris sent Ms. Johnson a handwritten note on January 23, 2001, stating that she was "perfectly satisfied" with the handling of the account and that she wished "to leave things as they are."

In February 2001, Ferris and his mother met with representatives of Wachovia regarding Ms. Ferris' estate planning options. Ms. Ferris stated that she did not want Moody to be a beneficiary of her estate, and insisted on a complete revocation of the Moody Trust. On October 31, 2001, Ms. Ferris executed both a new Last Will and Testament and a Revocation of the Moody Trust (the "Second Revocation") and her attorney gave these documents to Wachovia's Trust Department for "internal processing and approval."[1] The documents

---

[1] Wachovia requires that all new Last Will and Testaments and Trust Agreements that name Wachovia as an executor or trustee be reviewed and approved by its Trust Department.

were approved the following week, and on Friday, November 9, 2001, Wachovia sent the documents to Moody via UPS next-day air delivery. Ms. Ferris died unexpectedly on Saturday, November 10, and Moody received the documents on Monday, November 12, 2001. On November 14, 2001, Moody responded via letter, stating that the Moody Trust had become irrevocable upon Ms. Ferris' death, and that because the Second Revocation had not been received by Moody until after her death, that revocation was invalid. Ferris then brought the current action.

The trial court granted Moody's motion for summary judgment, and Ferris and Wachovia appeal, asserting that: (1) the First Revocation was effective and terminated the Moody Trust as a matter of law; (2) following the First Revocation, Ms. Ferris neither orally reinstated the Trust nor created a new, oral trust in favor of Moody; (3) the tax return filed by the Estate (the "Estate Tax Return") did not create a judicial estoppel which would bar Ferris and Wachovia from asserting that the Moody Trust had been revoked; (4) even if the First Revocation was invalid, the Second Revocation operated to revoke the Moody Trust; and (5) the trial court abused its discretion in allowing Moody to file nine separate pleadings less than thirty days before the summary judgment hearing.

1. Wachovia and Ferris argue that the First Revocation was effective as a matter of law upon Moody's receipt of the same. We agree.

Paragraph 6 of the Trust Agreement provided that "[t]he DO-NOR shall have the power to alter, revoke, or amend this Agreement, and to withdraw any portion, or all of the trust estate. . . . Any alteration, revocation, or amendment of this Agreement must be in writing, and delivered to the TRUSTEE." The First Revocation stated: "This is to request the cancellation of my revocable Trust #55587, dated August 28, 1999, with an approximate value of $550,000.00, and that you sell the securities and send me a check for the proceeds." Clearly, this letter satisfied the requirements of the Trust Agreement for revocation, as it was in writing and was delivered to the Trustee. Under its own terms, therefore, the Moody Trust was revoked as of June 20, 2000, the date on which Moody received the First Revocation.

2. We also agree that the trial court erred in finding that Ms. Ferris' conduct and statements following the First Revocation either reinstated the Moody Trust or created a new, oral trust in favor of Moody.

(a) We note that neither the trial court nor Moody cite any legal authority for the proposition that once Ms. Ferris revoked the Trust, she could "reinstate" it by changing her mind and communicating

that fact to the Trustee.[2] In any event, because the Trust Agreement falls within the Statute of Frauds, any reinstatement of the same was not effective unless it was in writing. See, e.g., *B & B Land Acquisition v. Mandell*, 305 Ill. App.3d 1068 (714 NE2d 58) (1999); *Nelson v. Estes*, 154 Ill. App.3d 937 (507 NE2d 530) (1987).

Recognizing this fact, Moody argued, and the trial court found, that Ms. Ferris' January 23, 2001 note to Ms. Johnson, stating that she wished to "leave things as they are," operated to reinstate the Trust. Again, however, neither Moody nor the trial court offer any legal authority or other rationale to support the proposition that Ms. Ferris' note was sufficient to constitute such a written reinstatement. Additionally, the trial court's finding on this issue ignores the fact that the January 23, 2001 note was induced by Moody's wrongful conduct.

Under the Trust Agreement, which it drafted, Moody had both a legal and a fiduciary obligation to recognize the validity of the First Revocation and to honor the same. Had Moody met these obligations, the January 23, 2001 correspondence from Ms. Ferris would have been unnecessary, and therefore would not have existed. This conclusion is reinforced by the fact that Ms. Ferris' correspondence was apparently in response to Moody's January 17, 2001 letter in which it made factual misrepresentations,[3] telling Ms. Ferris that she had to satisfy certain conditions before Moody could transfer the Trust assets back to her. In light of these facts, any finding that the January 23, 2001 writing was sufficient to reinstate the Moody Trust would only serve to reward Moody's attempted fraud upon Ms. Ferris. This we refuse to do.

(b) The trial court concluded that, even absent a written reinstatement of the Moody Trust, Ms. Ferris' conduct and statements following the First Revocation established a new, oral trust in favor of Moody. In reaching this conclusion, however, the trial court erroneously failed to apply Georgia law.

The Trust Agreement creating the Moody Trust stated that Illinois law would apply. As a result, the parties and the trial court assumed that Illinois law controlled the question of whether an oral trust existed. However, any oral trust that was created is not governed by the revoked Trust Agreement, and the party creating that alleged trust resided in Georgia, and made all relevant written and oral statements from Georgia. In light of these facts, we find that

---

[2] Notably, Moody never argues that Ms. Ferris did not intend to revoke the Trust when she signed and sent the letter; it merely argues that she changed her mind shortly thereafter.

[3] Arguably, given that it quoted Moody's Assistant General Counsel, that letter also made misrepresentations *of law* to Ms. Ferris.

Georgia law controls this question. See, e.g., *Godinger Silver Art Co. v. Olde Atlanta Marketing*, 269 Ga. App. 386, 389 (2) (604 SE2d 212) (2004) (The validity of a contract is governed by the law of the state where the contract was made.).

Given that Georgia law forbids the creation of oral express trusts, the trial court's finding on this issue must be reversed. See OCGA § 53-12-20 (a) ("An express trust shall be created or declared in writing."); *King v. Tyler*, 148 Ga. App. 272, 273 (250 SE2d 784) (1978) ("It has long been established that the mandate of this . . . statute [requiring a writing] is imperative.").

3. The trial court held that the Estate Tax Return, which treated the Moody Trust as still being in effect, judicially estopped Ferris and Wachovia from later asserting that the Moody Trust was revoked. We disagree.[4]

A threshold requirement for an application of judicial estoppel is that a party must have taken the allegedly inconsistent position "under oath in a prior [legal] proceeding." (Citation and punctuation omitted.) *Ajaka v. BrooksAmerica Mtg. Corp.*, 453 F3d 1339, 1344 (11th Cir. 2006). Moody presented no evidence supporting the conclusion that the filing of the Estate Tax Return represents a sworn statement by Ferris, who neither participated in the preparation of nor signed that document. Additionally, while the Estate Tax Return lists "Wachovia Bank, NA" as the preparer of the same, and states that the preparer certifies "under penalty of perjury" that the information contained therein is "to the best of my knowledge and belief true, correct, and complete," there is no signature on that document. Regardless of whether the Estate Tax Return was signed when filed, however, that filing cannot be equated with any kind of "proceeding," legal or otherwise. For these reasons, therefore, judicial estoppel cannot apply to bar the current action.

4. Given that the Moody Trust was revoked by the First Revocation, we need not address the enumerations of error related to the Second Revocation or the trial court's decision to allow Moody to file pleadings and evidence less than 30 days before the hearing on the motions for summary judgment.

For the reasons stated herein, the order of the trial court granting summary judgment to Moody on all claims is reversed.

---

[4] We note that whether Georgia law would allow the use of judicial estoppel under these circumstances is unsettled. Judicial estoppel is a federal doctrine, which Georgia has recognized only since 1994, *Southmark Corp. v. Trotter, Smith & Jacobs*, 212 Ga. App. 454 (442 SE2d 265) (1994), and we have applied the doctrine only where a litigant has taken a previous position in federal bankruptcy court inconsistent with the position they later asserted in a Georgia court. See, e.g., *IBF Participating Income Fund v. Dillard-Winecoff, LLC*, 275 Ga. 765, 766-767 (573 SE2d 58) (2002). This case, however, does not require us to decide whether Georgia would apply that doctrine outside of the bankruptcy context.

*Judgments reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JANUARY 19, 2007 —
RECONSIDERATION DENIED FEBRUARY 7, 2007 —

*Troutman Sanders, Stephen W. Riddell, Andrew M. Greene, Sarah Gohl Isabel, Dixon E. Nash,* for appellant (case no. A06A1737).
*Tom Pye,* for appellant (case no. A06A1738).
*Schreeder, Wheeler & Flint, David H. Flint, Timothy C. Batten, Sr., Mark W. Forsling,* for appellee.