A09A2015. OGLETHORPE POWER CORPORATION et al.
v. FORRISTER et al.
(693 SE2d 553)

BARNES, Judge.

The difference between a permanent nuisance and a continuing nuisance continues to be "one of the most baffling areas of the law."[1] In this case we must define the kind of nuisance created by the noise and vibration from a part-time power plant. If it is permanent, this consolidated suit against the owner and operator of the plant by 12 property owners is barred by the expiration of the statute of limitation. If the nuisance is continuing, however, as the trial court found in denying the defendants' motion for summary judgment, the suit is not barred. This court granted interlocutory review, and for the reasons that follow, we affirm the trial court's decision and remand for further proceedings.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Ford v. Bank of America Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Wachovia Bank v. Moody Bible Institute &c.*, 283 Ga. App. 488, 489 (642 SE2d 118) (2007).

"A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." OCGA § 41-1-1. A nuisance is permanent if the damage it causes is complete when the action creating the nuisance first occurs, and gives rise to a single cause of action that initiates the running of the statute of limitation. *City Council of Augusta v. Lombard*, 101 Ga. 724, 727 (28 SE 994) (1897). On the other hand, a nuisance is not permanent if it causes continuing damage, and is "one which can and should be abated by the person erecting or maintaining it." Id. In that case, "every continuance of the nuisance is a fresh nuisance for which a fresh action will lie" and a fresh statute of limitation begins to run. Id.

---

[1] *Provident Mut. Life Ins. Co. v. City of Atlanta*, 864 FSupp. 1274, 1285 (N.D. Ga. 1994).

"The classification of an alleged nuisance as continuing in nature directly controls the manner in which the statute of limitations will be applied to the underlying claim." *City of Atlanta v. Kleber*, 285 Ga. 413, 416 (677 SE2d 134) (2009).

In this case, the landowners contend the power plant creates a continuing nuisance. The defendants contend that, if the power plant created a nuisance at all, it was a permanent one and the statute of limitation began running when it started in 2000.

Viewed with all inferences in favor of the respondent to the motion for summary judgment, the record shows the Sewell Creek Energy Facility is a gas-fired "peaking" power plant which began operating in 2000. It is owned by Smarr EMC, and operated by Oglethorpe Power Corporation, both of which are power supply cooperatives formed and operated under OCGA § 46-3-170 et seq. The Sewell Creek facility does not operate continuously, but is designed to generate power only when energy usage exceeds the capacity generated by base and intermediate plants, such as on a hot summer afternoon when the use of air conditioning increases. The facility occupies 25 acres of a 160-acre site, located at the intersection of an underground gas line and an overhead high-capacity electricity transmission line in Polk County. Electricity is generated at Sewell Creek with four gas-fired combustion turbine units, which are variations of jet airplane engines, and which are used in peaking plants because they can be turned on and off in minutes to meet short-term energy demands.

Shortly after the plant started up in September 2000, neighbors began complaining of the noise and vibrations emitted from the turbine units. Before the 2002 operating season Sewell Creek added insulation and mufflers and during that season they tuned two of the units. The company also hired a sound and vibration expert who recommended several changes, some of which were implemented. The noise abated for a time, but in 2004 it returned, becoming louder with more of a "rumble" sound. In 2005 the noise became still louder; in 2006 a "booming" sound arose; and in 2007 a high-pitched squeal began, with the plant operating more often and later at night. One landowner noted that at times the plant was so loud that even inside her house her family "could not basically function."

Another peaking plant in Talbot County was built in 2003 with different exhaust stacks which worked well to reduce the noise, and a turbine plant in Omaha, Nebraska, was retrofitted with a similar kind of exhaust stack to reduce the noise level. An acoustical consultant specializing in the power industry testified that the exhaust stacks supplied by the manufacturer for Sewell Creek were designed with "very thin acoustical baffles and do not attenuate, or absorb, any low frequency sounds." The expert noted that "[t]he gas

turbine manufacturers are in the business of selling megawatts. They're not in the business of selling environmental controls, and some just take a cavalier attitude to noise requirements." While it could be "difficult to motivate the manufacturers to concentrate on environmental issues," by insisting, the expert said, the buyer could obtain units that produced lower sound levels. The expert concluded that retrofitting the Sewell Creek plant with better exhaust stacks would abate the noise to a level that was "essentially inaudible and imperceptible," at a cost witnesses have estimated as ranging from $2 million to $8 million.[2]

Sewell Creek moved for summary judgment, arguing that the noise and vibrations emanating from the plant constitute a permanent nuisance incapable of abatement. Therefore, the landowners' 2007 complaints are barred by the expiration of one of two statutes of limitation: the twelve-month statute of limitation for certain claims against EMCs under OCGA § 46-3-204, or the four-year statute for trespass or damage to realty under OCGA § 9-3-30. The landowners responded that the plant is not a permanent nuisance, that the noise and vibrations have changed during the plant's operations, and that the problems can be abated.

After conducting a hearing on the motion and reviewing the voluminous record, which includes 19 depositions as well as numerous exhibits and affidavits, the trial court denied the defendants' motion for summary judgment in a detailed, well-considered opinion. After noting that the plant is a public enterprise, the court found that the landowners introduced evidence that the noise and vibrations from the plant differed and worsened from 2004 to 2007. "With regards to the main issue in the case, that is whether the noise and vibrations are and should be abatable, there is sharp conflict in the evidence," the court held. Thus, it concluded, the defendants did not establish "as a matter of law that any nuisance produced by the operations at Sewell Creek is not capable of abatement" and thus could not be characterized as permanent as a matter of law.

The court then held that the 12-month statute of limitation in OCGA § 46-3-204 applies only to claims against an EMC in which the property owner's land would be burdened by a perpetual easement, and was "particularly inapplicable here." Finally, the trial court found that Sewell Creek was an intermittent operating plant without routine or normal operations; that the statute of limitation began to run in 2004 when the quantity and quality of the noise and vibrations changed adversely, and that claims preceding that date

---

[2] The engines cost $121 million, and the total cost of the plant was approximately $200 million.

274

were barred.

On appeal, the defendants argue that the trial court erred in ruling that the 12-month statute of limitation in OCGA § 46-3-204 does not apply. They also argue that the trial court erred in failing to find that Sewell Creek was a permanent nuisance and in finding that the landowners' claims accrued in 2004.

1. OCGA § 46-3-204, titled, "Limitations as to actions growing out of acquisition of rights of way, easements, or occupation of lands of others; damages recoverable," provides, in full:

> All rights of action accruing against any electric membership corporation growing out of the acquisition of rights of way or easements or the occupying of lands of others by such electric membership corporations shall be barred at the end of 12 months from the date of the accrual of such cause of action; and in cases where any such electric membership corporation is in possession of the lands of others without having condemned the property as provided, and such electric membership corporation is using any such land of another for any of the purposes for which an electric membership corporation may be created under this article, and the owners of the land took no legal steps to prevent the occupation of the land by the electric membership corporation, the rights of the owner of the land shall be limited to whatever damages may have been caused to his realty by such occupation; and this limitation shall apply to all persons whether sui juris or not.

The defendants argue that, in enacting this statute, "the Georgia Legislature established a one-year statute of limitations for property rights claims against EMCs." But "property rights" does not include the right to be free of nuisances, as the defendants seem to argue. The statute applies to "rights of way or easements or the occupying of lands of others," an easement being "the right in the owner of one parcel of land to use the land of another for a special purpose not inconsistent with a general property in the owner." (Citation and punctuation omitted.) *Brown v. Tomlinson*, 246 Ga. 513, 514 (272 SE2d 258) (1980).

The defendants further argue that, based on the facts of the one reported case addressing the statute, *Webster v. Snapping Shoals Elec. Membership Corp.*, 176 Ga. App. 265 (335 SE2d 637) (1985), the trial court failed to apply "the ordinary signification to all words" in the statute by limiting the scope of an easement to situations where it is coupled with a "symbol." To the contrary, the trial court did not limit the statute's application only to perpetual easements symbol-

ized by poles, power lines, generators, and other physical objects placed on someone else's property. It also held that the statute would apply to claims that the EMC was "otherwise occupying the property of another," and properly noted that no such claim arose here.

In this statutory context, the 12-month statute of limitation on complaints against an EMC related to the acquisition of rights of way does not apply to a landowner's complaint against an EMC related to noise pollution.

2. The defendants' other enumerations all relate to the trial court's decision that the power plant could be a continuing nuisance. They argue that, if it is a nuisance at all, Sewell Creek is a permanent nuisance and thus the statute of limitation began running when the plant started up in 2000 and expired before the landowners filed their complaints in 2007. As a "public enterprise," they contend, under the Restatement of Torts (Second) a nuisance resulting from its operation can only be continuing if it is caused by a minor feature and avertable at "slight expense." The exhaust stacks would have to be completely demolished and rebuilt to retrofit them as the landowners request, at great expense, they argue. Finally, they contend that the 2002 modifications undertaken to abate the noise did not toll the running of the statute of limitation or negate the fact that the neighbors complained of the noise beginning in 2000. The noise level has always been variable, they assert, and thus the landowners' argument that the noise level changed does not establish that the nuisance was continuing.

In *City of Atlanta v. Kleber*, supra, 285 Ga. 413, the Supreme Court of Georgia addressed the issue of continuing versus permanent nuisances. Kleber and his neighbors sued the city and Norfolk Southern railroad because their land flooded repeatedly due to an undersized culvert pipe. The court held that the landowners' complaints about the "mere presence" of an improperly installed culvert and pipe were complaints about a nuisance that was permanent in nature and presently barred by the statute of limitation. The landowners' complaints about the maintenance of the culvert and pipe over a period of years was a continuing nuisance claim, but was unsupported by any evidence in the record. According to the Supreme Court, these classifications of permanent versus continuing nuisance claims are supported by the Restatement of Torts (Second) § 930. Comment (c) observes that "[d]amage to neighboring landowners is frequently incident to the construction and operation of establishments employed in necessary public service. . . . [A] municipal electric plant sends smoke and fumes into homes and factories." According to the Restatement, if the damage results from a feature that could be averted at slight expense, successive actions are available, but if the damage results from "some substantial and

relatively enduring feature of the plan of construction or from an essential method of operation," then the damage cannot usually be abated by injunction and the injured person should be compensated completely for past and future invasions. Id. at 417.

Applying *Kleber*, which was decided after the trial court's decision, we affirm the trial court's denial of summary judgment to the defendants in this case. The landowners do not complain about the presence of the power plant. They complain about its operation, which produces variable noise and vibrations that increased markedly in 2004. As to whether the noise and vibrations are abatable nuisances, the trial court noted that "there is a sharp conflict in the evidence." The defendants assert that nothing short of shutting down the plant or completely rebuilding it would reduce the nuisance to a level acceptable to the landowners; the landowners contend that the plant could be retrofitted for a small percentage of the overall project cost. This is not a case to be judged summarily.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur. Miller, C. J., concurs in judgment only. Andrews, P. J., Johnson, P. J., and Ellington, J., dissent.*

ANDREWS, Presiding Judge, dissenting.

Because the power plant must be considered a permanent nuisance, and because plaintiffs became aware of the noise problem shortly after the plant began operating in 2000, plaintiffs' complaint is barred by the statute of limitation. Therefore, I respectfully dissent.

The general rule is that

> [a] nuisance, permanent and continuing in its character, the destruction or damage being at once complete upon the completion of the act by which the nuisance is created, gives but one right of action, which accrues immediately upon the creation of the nuisance and against which the statute of limitations begins, from that time, to run. Where a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie.

(Citations and punctuation omitted.) *Shaheen v. G & G Corp.*, 230 Ga. 646, 647-648 (198 SE2d 853) (1973).

With regard to nuisances created by a public entity, the Supreme Court in *City of Atlanta v. Kleber*, 285 Ga. 413 (677 SE2d 134) (2009),

quoted from The Restatement of Torts (Second) § 930 as follows:

> Damage to neighboring landowners is frequently incident to the construction and operation of establishments employed in necessary public service, which nominally have the right of taking land by eminent domain. *A railway embankment with an inadequate culvert diverts water upon nearby land; a municipal electric plant sends smoke and fumes into homes and factories; a city sewage disposal system pollutes a stream to the injury of bordering landowners. If the damage results from some minor feature of construction or management, so that it could be averted at slight expense, the normal remedy of successive actions for past invasions or relief by injunction would alone be available, as is also true if the harm results from an improper and unnecessary method of operation. But if the invasions are caused by some substantial and relatively enduring feature of the plan of construction or from an essential method of operation, then it will usually not be abatable. . . .*

(Emphasis in original.) *City of Atlanta*, supra at 417.

In this case, there are no allegations of negligent construction or maintenance. Therefore, the power plant can only be deemed to be a continuing nuisance if "the damage results from some minor feature of construction or management, so that it could be averted at slight expense." Restatement (Second) of Torts § 930.

As appellees acknowledge in their brief, the cost to retrofit the stacks has been variously estimated by the experts testifying as $8 million, $3 million, and somewhere between $5 million and $10 million. This is not a "minor construction" that can be accomplished at "slight expense."

In concluding that there was an issue of fact as to whether this cost to abate the nuisance was slight, the majority compares the millions that it would cost to retrofit the plant to the $200 million that it cost to build it. The majority cites to no case law, and I find none, that supports this method of determining whether a cost was slight or substantial.

In any event, the "millions and millions" that it would cost to do a "tear-down of the exhaust silencing system" must, under any definition, be deemed substantial. Therefore, because the nuisance is caused by a public rather than a private entity, and because the nuisance is not abatable, the power plant must be considered a permanent nuisance.

Moreover, as pointed out in the amicus brief, there is additional authority for finding the power plant to be a permanent rather than

a continuing nuisance. As stated in *City of Atlanta*, supra, where the damage results from the operation of establishments employed in necessary public service, and where the invasions are caused by some substantial and relatively enduring feature of the plan of construction or from an essential method of operation, then it will usually not be abatable. Id. at 417, quoting Restatement (Second) of Torts § 930. Further, in *Bainbridge Power Co. v. Ivey*, 41 Ga. App. 193 (152 SE 306) (1930), this Court held: "A permanent nuisance is not necessarily one which can never, under any circumstances, be abated; but it is one whose character is such that, from its nature and under the circumstances of its existence, it presumably will continue indefinitely." Id.

This holding is important for public utilities and other entities that operate plants with long life spans. As the amicus brief points out, utilities and other public entities could face future nuisance claims alleging that, even though it would cost millions, it had become technologically feasible to abate the nuisance.

Because it is undisputed that the landowners were aware of the noise problem and began lodging complaints about the noise level in 2000 and 2001, the statute of limitation began to run at that time. Thus, this suit filed in 2007 is barred by the four-year statute of limitation. Accordingly, the trial court erred in not granting defendants' motion for summary judgment on these grounds.

I am authorized to state that Presiding Judge Johnson and Judge Ellington join in this dissent.

DECIDED MARCH 30, 2010 — 

*McNatt, Greene & Peterson, Hugh B. McNatt, Balch & Bingham, Natalie M. Christensen*, for appellants.

*McRae, Stegall, Peek, Harman, Smith & Manning, Michael D. McRae, Jason B. Sanker*, for appellees.

*Charles T. Autry, Roland Hall, Peter M. Degnan, Jonathan E. Wells*, amici curiae.