S10G1244. OGLETHORPE POWER CORPORATION et al.
v. FORRISTER et al.

(711 SE2d 641)

NAHMIAS, Justice.

We granted certiorari in this case to consider when the statute of limitation began to run in this action claiming that noise from a power plant operated by a public utility constitutes a nuisance. The trial court denied summary judgment, holding that the statute of limitation had not run on the plaintiffs' claim, and the Court of Appeals affirmed. See *Oglethorpe Power Corp. v. Forrister*, 303 Ga. App. 271 (693 SE2d 553) (2010). We conclude that the Court of Appeals erred in part of its reasoning and in not reversing the trial court's denial of summary judgment in part, but that it also properly affirmed the denial of summary judgment in part.

1. Appellant Smarr EMC owns and appellant Oglethorpe Power Corporation operates the Sewell Creek Energy Facility, a "peaking" power plant that began operating in 2000. A peaking plant stands ready when customers demand high amounts of electricity, as on hot summer days when electricity usage spikes. Gas-fired combustion

turbines are used for peaking plants because they can be turned on and off within minutes. The appellees are neighbors of the power plant who filed this lawsuit in 2007, alleging that "since the commencement of operations of [Sewell Creek], there have been periods of excessive noise, vibrations, and interruption of plaintiffs' use and enjoyment of their adjoining property."

Smarr and Oglethorpe moved for summary judgment. They contended that the plant was a permanent nuisance because the harm resulted from "some substantial and relatively enduring feature of the plan of construction or from an essential method of operation," Restatement (Second) of Torts § 930, cmt. c, and also could not "be averted at slight expense." Id. According to Smarr and Oglethorpe, because the appellees did not bring their action within four years from the date the plant began operating, it was barred by the applicable statute of limitation. See OCGA § 9-3-30 (a) (providing that "[a]ll actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues"). The plaintiffs responded that the noise generated by the plant constituted a continuing nuisance that could and should be abated, that the noise became worse and different in 2004 than it was in earlier years of operation, and that their action therefore was not barred by OCGA § 9-3-30 (a).

The trial court held that there was a "sharp conflict in the evidence" regarding whether the noise could be abated; that therefore Oglethorpe and Smarr had not established as a matter of law that the nuisance was permanent and non-abatable; that, starting with the 2004 operating season, "there is evidence tending to suggest an adverse change occurred in quantity and quality of noises and vibrations emitted from Sewell Creek from that observed before the start of the 2004 operating season"; and that the harm from the plant thus became obvious to the plaintiffs beginning with the 2004 operating season. For these reasons, the trial court ruled that the cause of action was not barred by OCGA § 9-3-30.

In a badly-divided whole-court decision, the Court of Appeals affirmed the denial of summary judgment. See *Oglethorpe*, 303 Ga. App. at 275-276. The three-judge plurality held that, under *City of Atlanta v. Kleber*, 285 Ga. 413 (677 SE2d 134) (2009), an issue of fact remained as to whether the nuisance was abatable at "slight expense" and that, if a jury resolved this issue in the plaintiffs' favor, the nuisance would be a continuing one and the plaintiffs could recover damages for injuries suffered in the four years preceding the filing of the complaint. *Oglethorpe*, 303 Ga. App. at 275-276. Chief Judge Miller concurred in the judgment only. See id. at 276. Three other judges dissented on the ground that, because the cost of the repairs needed to abate the nuisance — at least $3 million — was not

slight, the Sewell Creek plant was a permanent nuisance for which the statute of limitation began to run in 2000 when the plant began operations and expired in 2004 before the plaintiffs filed this action. See id. at 277. The dissenters also argued that the noise from the plant was a permanent nuisance under *Kleber* because it resulted from a "substantial and relatively enduring feature of the plan of construction or from an essential method of operation." Id. at 278. We granted certiorari.

2. Generally, whether a nuisance is deemed to be continuing or permanent in nature determines the "manner in which the statute of limitations will be applied." *Kleber*, 285 Ga. at 416. If the nuisance is not abatable, it is considered permanent, and a plaintiff is allowed only one cause of action to recover damages for past and future harm. The statute of limitation begins to run against such a claim upon the creation of the nuisance once some portion of the harm becomes observable. See id.; Restatement (Second) of Torts § 899, cmt. d. A nuisance is deemed not abatable, even if possible to abate, if "it is one whose character is such that, from its nature and under the circumstances of its existence, it presumably will continue indefinitely." *Bainbridge Power Co. v. Ivey*, 41 Ga. App. 193, 193 (152 SE 306) (1930). However, a nuisance is not considered permanent if it is " 'one which can and should be abated.' " *Kleber*, 285 Ga. at 416 (citation omitted). In this situation, "every continuance of the nuisance is a fresh nuisance for which a fresh action will lie," and the statute of limitation will begin to run at the time of each continuance of the harm. Id.

The appellate courts of this State have adopted rules set forth in the Restatement (Second) of Torts to assist in applying these principles. See, e.g., *Kleber*, 285 Ga. at 415-417; *Cox v. Cambridge Square Towne Houses*, 239 Ga. 127, 128-129 (236 SE2d 73) (1977). Under the Restatement,

> [i]n cases in which a public utility or governmental agency erects a harmful structure such as a bridge or conducts a harmful activity such as opening a sewer that pollutes a stream and the interference with the plaintiff's interests *is not abatable* by a proceeding in equity, the statutory period normally begins when the structure is completed or the activity is begun. In some cases, however, in which the defendant has done an act that may have a permanent injurious effect, but when the effect is problematical and no harm is observable, the statute does not begin to run until some portion of the harm becomes observable.

Restatement (Second) of Torts § 899, cmt. d (emphasis added).

Section 930 of the Restatement provides guidance for when a harmful activity by a public utility is subject to abatement.

> Damage to neighboring landowners is frequently incident to the construction and operation of establishments employed in necessary public service, which nominally have the right of taking land by eminent domain. A railway embankment with an inadequate culvert diverts water upon nearby land; a municipal electric plant sends smoke and fumes into homes and factories; a city sewage disposal system pollutes a stream to the injury of bordering landowners. If the damage results from *some minor feature of construction or management, so that it could be averted at slight expense,* the normal remedy of successive actions for past invasions or relief by injunction would alone be available, as is also true if the harm results from *an improper and unnecessary method of operation.* But if the invasions are caused by *some substantial and relatively enduring feature of the plan of construction or from an essential method of operation,* then it will usually not be abatable by injunction and the desirability of granting the injured person complete compensation for past and future invasions is apparent.

Restatement (Second) of Torts § 930, cmt. c (emphasis added).

In *Kleber,* we discussed these rules as applied to a claim filed against an entity "employed in necessary public service." The plaintiffs filed a nuisance action against the Norfolk Southern railroad, alleging that a culvert and drainage pipe installed by Norfolk were insufficient to drain a 37-acre basin and that the inadequate culvert and pipe, combined with inadequate maintenance, caused flooding on their property. See *Kleber,* 285 Ga. at 414-416. We held that, to the extent the plaintiffs complained about the "mere presence" of the inadequate culvert and pipe, the claim was barred by the statute of limitation in OCGA § 9-3-30, because the pipe and culvert were installed well over four years before the landowners filed their action. See 285 Ga. at 416-417. We also held, however, that to the extent the landowners complained that the continued flooding was due to the improper maintenance of the culvert and pipe, they were "allowed to contend that Norfolk's maintenance of the culvert and pipe within the four years preceding their lawsuit created a nuisance." Id. at 417.

We explained that § 930, comment c, of the Restatement supported our holding. See 285 Ga. at 417. In doing so, we did not discuss whether a new pipe or culvert could be installed at "slight expense." Instead, the part of comment c that supported our holding

regarding the installation of drainage system was the part stating that a nuisance caused by a "substantial and relatively enduring feature of the plan of construction or . . . an essential method of operation" is usually not abatable. Conversely, our holding regarding the improper maintenance of the culvert and pipe reflected "an improper and unnecessary method of operation" that "could be averted at slight expense" and was thus a continuing nuisance. See 285 Ga. at 417; Restatement (Second) of Torts § 930, cmt. c.

Thus, under *Kleber* and a plain reading of the Restatement's § 930, if a public utility is alleged to be causing a nuisance through a "substantial and relatively enduring feature of the plan of construction or from an essential method of operation," then, by definition, the nuisance is not caused by a "minor feature of construction or management, so that it could be averted at slight expense." The Restatement recognizes that if an establishment providing a necessary public service would have to be substantially rebuilt or otherwise have its basic operations shut down to stop a nuisance, thereby potentially harming the general public, a plaintiff cannot demand such abatement but must instead seek a damages award for past and future harm within the statutorily prescribed period.

Here, we agree with Smarr and Oglethorpe's contention that the nuisance alleged results from a "substantial and relatively enduring feature of the plan of construction or from an essential method of operation" of the Sewell Creek Energy Facility. It is undisputed that the noise created by the power plant is caused by the exhaust of the gas turbines traveling at a high rate of speed through multi-story exhaust stacks that do not contain an adequate noise reduction system. To rectify the problem, the parties agree that there would have to be a complete "tear-down" and rebuilding of the exhaust stacks, which would stop the production of electricity while the stacks were replaced. The exhaust silencing system, which is an integral part of the gas turbines that generate power, is an enduring feature of the power plant's plan of construction, and the noise emanating from the exhaust stacks results from the essential method of the plant's operation, which is the generation of electrical power.

Thus, the exhaust stacks are like the culvert and drainage pipe installed by Norfolk, which were held to be a permanent nuisance in *Kleber*. Consequently, the plaintiffs here are limited to filing one cause of action for the recovery of past and future damages caused by a permanent nuisance. See *Kleber*, 285 Ga. at 416-417; Restatement (Second) of Torts § 899, cmt. d; § 930, cmt. c. The analysis of the Court of Appeals' plurality was flawed. It omitted any consideration of whether the nuisance resulted from a "minor feature of construction or management" or instead resulted from an enduring feature

of the power plant's plan of construction or an essential method of its operation and grappled only with whether the nuisance could be abated at "slight expense." See *Oglethorpe*, 303 Ga. App. at 275-276.

3. It follows that the plaintiffs' action would be barred because they did not file their lawsuit until almost seven years after the Sewell Creek plant became operational — unless some new harm that was not previously observable occurred within the four years preceding the filing of their cause of action in 2007. See Restatement (Second) of Torts § 899, cmt. d. In this regard, the plaintiffs contend that the record reveals a factual dispute regarding whether a new noise, not previously observable, began in 2004, which requires a trial to resolve. We agree.

Oglethorpe and Smarr's noise abatement expert testified that it appeared that the same types of noises that existed when the plant became operational continued into 2008, and some of the plaintiffs did complain of annoying noise shortly after the plant began operations in 2000. However, that is not the only evidence, and in reviewing the trial court's ruling on summary judgment, we must "view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *Kaplan v. City of Sandy Springs*, 286 Ga. 559, 560 (690 SE2d 395) (2010). The trial court correctly found that the record includes

> evidence tending to suggest that during the 2002 and 2003 operating seasons, the noise and vibration levels decreased substantially to the point that Plaintiffs were not affected. There is also some expert and anecdotal evidence suggesting an adverse change in the nature, extent and amount of noises and vibrations emanating from Sewell Creek beginning at some point after the start of the 2004 operating season.

To the extent the trial court found that a factual issue remains concerning whether there was an "adverse change in the *nature*" of the noises and vibrations coming from the plant after the start of the 2004 operating season, the denial of summary judgment was appropriate. Such a change in the type of the noise would constitute a new harm that the plaintiffs did not observe before, and because it occurred within four years of their filing this lawsuit, they would not be precluded from filing suit to recover damages. See Restatement (Second) of Torts § 899, cmt. d. If the jury finds in favor of the plaintiffs, it may grant a single damages award for the harm caused by the new type of noise suffered during the four years before the suit was filed and for all future injuries from this permanent nuisance.

By contrast, to the extent the trial court found that a factual issue remains concerning whether there was an "adverse change in the . . . extent and amount" of the noises and vibrations after the start of the 2004 operating season, the denial of summary judgment was inappropriate. If a plaintiff could sue a public utility each time the harm resulting from a permanent nuisance changed by degree, the rule requiring a plaintiff to bring one lawsuit for past and future damages within the applicable statute of limitation would be meaningless. See Restatement (Second) of Torts § 899, cmt. d (stating that the statute of limitation begins to run on a permanent nuisance once some portion of the harm becomes observable); *Kleber*, 285 Ga. at 414-417 (holding that an action for flood damage caused by a permanent nuisance was barred by the statute of limitation when the flooding initially occurred on the plaintiffs' land seven years before they filed their nuisance action but had increased in degree, becoming more substantial, within one year of filing the action).

4. Accordingly, Oglethorpe and Smarr are not fully entitled to summary judgment on the nuisance claim filed against them. They are, however, entitled to summary judgment to the extent the plaintiffs seek damages for harm that has changed only by degree since the power plant began operation. We therefore affirm the judgment of the Court of Appeals in part and reverse it in part and remand the case for proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part, and case remanded with direction. All the Justices concur.*

DECIDED JUNE 13, 2011.

*Balch & Bingham, Natalie M. C. Beasman, Autry, Horton & Cole, G. Mark Cole, McNatt, Greene & Peterson, Hugh B. McNatt*, for appellants.

*McRae, Stegall, Peek, Harman, Smith & Manning, Michael D. McRae, Jason B. Sanker, Robert T. Monroe*, for appellees.

*Autry, Horton & Cole, Charles T. Autry, Roland F. Hall, Tisinger Vance, Kristin H. Dial, Steven T. Minor, Alston & Bird, Peter M. Degnan, Jonathan E. Wells*, amici curiae.