317 Ga. 636
FINAL COPY

S22G0874. WISE BUSINESS FORMS, INC. v. FORSYTH
COUNTY et al.

LaGrua, Justice.

We granted certiorari in this case to clarify the standards for determining when a claim for inverse condemnation by permanent nuisance accrues for purposes of applying the four-year statute of limitation set forth in OCGA § 9-3-30 (a).[1] For the reasons that follow, we conclude that, although the Court of Appeals articulated one of the correct standards to apply in determining when the applicable statute of limitation begins to run on a permanent nuisance claim, the Court of Appeals failed to construe the allegations of the complaint in the light most favorable to the plaintiff as the non-moving party; erred in concluding there was only

---

[1] OCGA § 9-3-30 (a) provides that "[a]ll actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues."

one harm in this case that was "immediately observable" to the plaintiff when the nuisance at issue was completed; and erred in concluding that the statute of limitation had run on the plaintiff's claim as a matter of law. Therefore, we must reverse.

1. *Pertinent Facts and Procedural History*

(a) *Factual background*

The relevant facts, as summarized by the Court of Appeals from the allegations in the complaint, are as follows:

> [Wise Business Forms, Inc. ("Wise"),] is the nation's fourth largest printer of business forms, and is headquartered in Forsyth County. The property used for its headquarters was purchased in three separate acquisitions beginning in 1984 and running through 1996.
> A 36-inch metal pipe ("Subject Pipe") runs underneath Wise's property and has been in place since 1985. Approximately twenty-five feet of the drainage pipe extends into a two-acre tract of land west of Wise's property ("Corner Tract"). The Corner Tract is undeveloped and forms a natural detention basin into which a large vertical concrete drainage structure with a large stormwater outlet pipe ("Feeder Structure") was constructed. Wise asserted in its complaint that water from the Feeder Structure on the Corner Tract was designed to flow through the Subject Pipe underneath Wise's property.

The McFarland Parkway Widening Project ("McFarland Parkway Project") extended McFarland Road from two lanes to four lanes and was completed in 2000. Wise alleged in its complaint that this project resulted in a substantial increase of the surface and stormwater runoff flowing underneath its property. Specifically, Wise asserted that[,] as part of the project[,] the Appellees designed and installed a sophisticated stormwater drainage system, while failing to provide detention facilities to mitigate the increased runoff, and that the drainage system ultimately channeled water to the Corner Tract and subsequently through the Subject Pipe running underneath Wise's property.

On June 27, 2016, Wise noticed the first signs of a sinkhole on its property. Wise subsequently conducted a test to determine the origin of the majority of water flowing through the Subject Pipe. Wise asserted that by tracking marked ping pong balls through the drainage system, it was able to determine that the "bulk of the stormwater" that flowed through the Subject Pipe derived from the catch basins and storm sewers built as part of the McFarland Parkway Project. Wise also had the Subject Pipe inspected using a robotic vehicle and discovered deterioration and erosion within the pipe.

*Wise Business Forms v. Forsyth County*, 363 Ga. App. 325, 326-327 (870 SE2d 894) (2022).

(b) *Trial court proceedings*

On October 25, 2020, Wise filed a complaint against Forsyth County ("County") and the Georgia Department of Transportation

("DOT") (collectively "Appellees") in the Superior Court of Forsyth County, raising claims for per se taking of Wise's property, inverse condemnation by permanent nuisance, attorney fees under OCGA § 13-6-11, and violation of 42 USC § 1983. Wise amended its complaint to add a claim for inverse condemnation by abatable nuisance on February 8, 2021.

In support of Wise's claims, Wise alleged, among other allegations, that the increase in the impermeable surface when McFarland Parkway was widened and the drainage system installed by Appellees as part of that project "deliberately channeled" stormwater runoff into the Subject Pipe — constituting a "continuing trespass" — and over time, the increased flow and velocity of water running through the underground pipe eroded the pipe and surrounding soil, ultimately causing a sinkhole. As for the resulting physical harms to Wise's property, Wise alleged that (1) the "first visible sign" of the sinkhole occurred on June 27, 2016; (2) Wise discovered "serious deterioration" of the underground pipe in

4

September 2016 after deploying a robotic vehicle; and (3) this deterioration was "the product of hidden abrasion, corrosion, and erosion over the years caused by the increased volume and velocity of stormwater runoff" driven through the pipe by the drainage work completed for the McFarland Parkway Project. In furtherance of these allegations, Wise sought compensation "for the diminished value of its property, for the deprivation of the full use and enjoyment of its property, for the cost of repairs required to remedy the situation, and for the continuing damage to and loss of use of portions of its property caused by [Appellees]," as well as "the expense of the future repair and maintenance of the Subject Pipe traversing the Wise Property."

Contemporaneously with the filing of Appellees' answers and before discovery commenced in this case, Appellees separately moved to dismiss Wise's complaint on multiple grounds, including Wise's failure to file its complaint within the four-year statute of limitation period under OCGA § 9-3-30 (a). In furtherance thereof,

5

Appellees asserted that Wise's inverse-condemnation-by-permanent-nuisance claim — the only claim at issue in this appeal — accrued in 2000 when the alleged increase in the volume and velocity of the stormwater passing through the Subject Pipe began, and thus, this claim was barred by the applicable statute of limitation.

On March 15, 2021, the trial court granted the motions to dismiss. In dismissing the complaint, the trial court concluded as follows: (1) Wise's per se taking claim "accrued at the time of the road widening project" in 2000 and was "barred by the four-year statute of limitation governing trespass to real property"; (2) Wise's claim for inverse condemnation by abatable nuisance "provide[d] no basis for relief" because Wise did not claim that Appellees were "responsible for maintaining the pipe at issue"; (3) Wise's claim premised on 42 USC § 1983 and its derivative claim for attorney fees and expenses pursuant to OCGA § 13-6-11 failed as a matter of law; and (4) Wise's inverse-condemnation-by-permanent-nuisance claim,

6

while timely,[2] was nevertheless "subject to dismissal for [Wise's] failure to attach to its [c]omplaint the expert affidavit required by OCGA § 9-11-9.1 (g) (21)." Wise appealed the trial court's dismissal of its inverse-condemnation-by-abatable-nuisance and inverse-condemnation-by-permanent-nuisance claims to the Court of Appeals.

(c) *The Court of Appeals' decision*

The Court of Appeals affirmed the trial court's dismissal of Wise's inverse-condemnation-by-abatable-nuisance claim on the basis that "Wise failed to allege facts demonstrating that the Appellees had a duty to maintain the Subject Pipe, as required for a claim of abatable nuisance." *Wise*, 363 Ga. App. at 329 (2). The Court of Appeals also affirmed the trial court's dismissal of Wise's

_____

[2] The trial court concluded that the four-year statute of limitation under OCGA § 9-3-30 (a) did not begin to run on this claim until June 27, 2016, when Wise discovered the sinkhole on its property. While Wise did not file its complaint until October 25, 2020 — more than four years after the trial court concluded the statute of limitation had started to run — the trial court observed that this Court's *Declarations of Judicial Emergency* order tolled the "statutes of limitation" and rendered the filing of the complaint timely.

inverse-condemnation-by-permanent-nuisance claim, noting that, although "the trial court erred in finding that Wise's complaint required an expert affidavit pursuant to OCGA § 9-11-9.1,"[3] Wise's claim for inverse condemnation by permanent nuisance was "nonetheless properly dismissed, as it was barred by the four-year statute of limitation" under OCGA § 9-3-30 (a). Id. at 327-328 (1).

In concluding that Wise's inverse-condemnation-by-permanent-nuisance claim was barred by the four-year statute of limitation under OCGA § 9-3-30 (a), the Court of Appeals held that, "[i]n claims for permanent nuisances, 'a plaintiff is allowed only one cause of action to recover damages for past and future harm. The statute of limitation begins to run against such a claim upon the creation of the nuisance once some portion of the harm becomes observable.'" *Wise*, 363 Ga. App. at 328 (1) (quoting *Oglethorpe*

---

[3] In reaching this conclusion, the Court of Appeals explained that, because Wise's claim for inverse condemnation by permanent nuisance was "premised on the Appellees' intentional acts giving rise to an alleged nuisance" — not on claims of negligence — "the requirement of OCGA § 9-11-9.1 to file an expert affidavit when a claim alleges damages for professional negligence [was] inapposite here." Id. at 327-328 (1) (citation and punctuation omitted).

*Power Corp. v. Forrister*, 289 Ga. 331, 333 (2) (711 SE2d 641) (2011)).

The Court of Appeals then concluded that

> the construction of the stormwater drainage system by
> the Appellees to divert th[e] increased stormwater runoff
> through the Subject Pipe, and the alleged dramatic
> increase in stormwater runoff being driven into the
> Feeder Structure, would have been observable. Thus, as
> a permanent nuisance which had some portion of the
> harm immediately observable, the statute of limitation
> began in 2000 when the McFarland Parkway Project was
> complete.

Id.

We granted Wise's petition for certiorari and asked the parties
to address whether the Court of Appeals correctly affirmed the
dismissal of Wise's inverse-condemnation-by-permanent-nuisance
claim because it was barred by the statute of limitation set by OCGA
§ 9-3-30 (a). We did not grant certiorari on the Court of Appeals'
ruling that Wise's claim for inverse condemnation by permanent
nuisance did not require an expert affidavit under OCGA § 9-11-9.1
or on its ruling that Wise's inverse-condemnation-by-abatable-
nuisance claim was properly dismissed by the trial court.

9

2. *Analysis*

OCGA § 41-1-1 defines a "nuisance" as

> . . . anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man.[4]

Generally, nuisances are classified as "abatable" or "permanent." An "abatable" nuisance is one where the harm to a plaintiff's property "results from some minor feature of construction or management" or "from an improper and unnecessary method of

---

[4] See also, e.g., *City Council of Augusta v. Lombard*, 101 Ga. 724 (28 SE 994) (1897) (holding that the city's removal of water gates which controlled water flowing through a series of canals, causing "large and unusual quantities of water" to flow "upon the premises of the plaintiff" in "certain times of high water," constituted a nuisance); *Cox v. Cambridge Square Towne Houses*, 239 Ga. 127 (236 SE2d 73) (1977) (holding that an apartment owner's installation of a storm drain system in an apartment complex, which "greatly increased the flow of surface waters across [the adjacent landowner's] land" constituted a nuisance); *City of Atlanta v. Kleber*, 285 Ga. 413, 413 (677 SE2d 134) (2009) (holding that an improperly maintained city drainage pipe and culvert — resulting in the flooding of the plaintiffs' property during heavy rains — constituted a nuisance); *Forrister*, 289 Ga. at 331-332 (holding that gas-fired combustion turbines in a power plant, which were turned on "when customers demand[ed] high amounts of electricity" and which caused "excessive noise" and "vibrations," constituted a nuisance).

10

operation," which can "be averted at slight expense" or readily enjoined. *Forrister*, 289 Ga. at 334 (2) (citation, punctuation and emphasis omitted). A "permanent" nuisance is "one whose character is such that, from its nature and under the circumstances of its existence, it presumably will continue indefinitely." Id. at 333 (2) (citation and punctuation omitted). Determining whether a nuisance is abatable or permanent will typically dictate "the manner in which the statute of limitations will be applied." Id. (citation and punctuation omitted).

Here, Wise asserted claims against Appellees for both inverse condemnation by abatable nuisance and inverse condemnation by permanent nuisance. However, as noted above, this appeal concerns only Wise's claim for inverse condemnation by permanent nuisance, so we will limit our analysis to when the statute of limitation starts to run on the permanent nuisance claim. See OCGA § 9-3-30 (a) ("[a]ll actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues").

In concluding that Wise's permanent nuisance claim was barred by OCGA § 9-3-30 (a), the Court of Appeals relied on a 2011 case from this Court, in which we explained that, when a nuisance is "considered permanent," a "plaintiff is allowed only one cause of action to recover damages for past and future harm," and "[t]he statute of limitation begins to run against such a claim upon the creation of the nuisance once some portion of the harm becomes observable." *Forrister*, 289 Ga. at 333 (2). However, this language from *Forrister* is imprecise because it does not explain that this standard will not apply in *all* permanent nuisance cases.

Permanent nuisance cases vary in relation to when the alleged harm to a plaintiff's property caused by the nuisance becomes "observable" to the plaintiff. *Forrister*, 289 Ga. at 333 (2). In some cases, the harm to the plaintiff's property is immediately observable "upon the creation of the nuisance." Id. For example, where a landowner or governmental agency "erects a harmful structure such as a bridge or conducts a harmful activity such as opening a sewer

that pollutes a stream," and it is immediately obvious that the structure or activity interferes with the plaintiff's interests, the plaintiff must file "one cause of action for the recovery of past and future damages caused by [the] permanent nuisance" within four years of the date the structure is completed or the harmful activity is commenced. Id. at 333-336 (2)-(3) (citing Restatement (Second) of Torts §§ 899 and 930). Phrased another way, where the "construction and continuance" of the permanent nuisance at issue is "necessarily an injury, the damage is original, and may be at once fully compensated. In such case[s], the statute of limitations begins to run upon the construction of the nuisance." *City Council of Augusta v. Lombard*, 101 Ga. 724, 728 (28 SE 994) (1897).

In other permanent nuisance cases, the harm to the plaintiff's property is not "observable" to the plaintiff until later — sometimes years later. *Forrister*, 289 Ga. at 333 (2). This circumstance may arise when a structure is built or an activity is commenced that is not injurious in and of itself, but it becomes a "permanent and

13

continuing nuisance" because of "some supervening cause[, like heavy rains], which produce[s] special injury at different periods." *Lombard*, 101 Ga. at 728. In such cases, "a separate action lies for each injury thus occasioned, and the statute begins to run" from "the time when the special injury is occasioned." Id. (citing *Athens Mfg. Co. v. Rucker*, 80 Ga. 291 (4 SE 885) (1887) ("So this court has held that recovery might be had for injuries [to a plaintiff's property] resulting from the erection and maintenance of a dam, in so far as such injuries occurred within four years preceding the bringing of the action, although the dam may have remained unchanged for twenty years.")).

There are also cases, however, where the permanent nuisance causes multiple harms to a plaintiff's property — some of which are immediately observable upon the completion or construction of the nuisance and some of which are not observable until later — i.e., cases where the nuisance "is by its nature continuing" and "will continue indefinitely." *Cox v. Cambridge Square Towne Houses*, 239

14

Ga. 127, 127-128 (236 SE2d 73) (1977). Pinpointing when the statute of limitation starts to run in such cases can be challenging — both for litigants and for factfinders. See id. (noting that confusion "has long existed as to when a nuisance, which is by its nature continuing, is considered 'permanent'").

The circumstances at issue in *Cox* were strikingly similar to those in the present case.[5] The subject nuisance was "by its nature continuing"; the lawsuit arising out of this nuisance was "filed more than four years after the creation of the nuisance"; and "the dispute center[ed] around whether the action for damages [was] barred by

---

[5] *Cox* involved an apartment owner's installation of a storm drain system in an apartment complex. Id. More than four years after the drain system was installed, the adjacent landowner filed a lawsuit against the apartment owner, alleging that "the storm drain system greatly increased the flow of surface waters across his land and constituted a trespass" and that, "as a result of the storm sewer, whenever heavy rains fall, the sewer empties great quantities of water into a creek which runs through the [adjacent landowner's] back yard," causing "erosion of the banks of the creek" and "slowly washing away the [adjacent landowner's] property." Id. at 127, 129. The trial court dismissed the landowner's complaint, concluding that the "claims were barred by the four year statute of limitation applicable to damage to realty." Id. at 127. On appeal, this Court reversed the trial court's ruling, concluding that "it was error to dismiss the suit" because the statute of limitation had not run on the landowner's claims. Id. at 129.

the statute of limitation." Id. at 127. In *Cox*, the Court held that, where the subject nuisance "will continue indefinitely, the appellant has the right to elect to treat the nuisance as temporary and sue for all those damages which have occurred within the past four years, or he may elect to sue for all future damages as well and put an end to the matter." Id. at 129 (citation and punctuation omitted).

In other words, under *Cox*, when a nuisance "is by its nature continuing," the plaintiff can elect to proceed in one of two ways. The first option would be to treat the nuisance as "temporary" and file a lawsuit to recover for "all those damages [or harms] which have occurred [to the plaintiff's property] within the past four years." *Cox*, 239 Ga. at 129. And, by implication, when the plaintiff elects to proceed in this manner and treats the nuisance as "temporary," if the continuing nuisance causes additional harms to the plaintiff's property in the future, the plaintiff can file another lawsuit seeking recovery for these additional harms, as long as the plaintiff initiates the lawsuit within four years from the occurrence of that future

16

harm.  See *Lombard*, 101 Ga. at 727 (in these cases, "every continuance of the nuisance is a fresh nuisance, for which a fresh action will lie," and the cause of action "accrues at the time of such continuance" and "the statute of limitations runs only from the time of such accrual").  Alternatively, the plaintiff can elect to file a single lawsuit to recover for harms that occurred to the plaintiff's property within the past four years and for all prospective harms that might occur to the plaintiff's property in the future.  See *Cox*, 239 Ga. at 127-129.  And, if the plaintiff elects to proceed in this manner, the plaintiff is limited to seeking those damages in one lawsuit.  See id.

In the present case, the nuisance complained of is the expansion of McFarland Parkway, the drainage system associated with the McFarland Parkway Project, and other construction aspects of this roadway expansion project, which was completed in 2000.  In its complaint, Wise alleged that, as a result of this nuisance, whenever significant rainfall occurs, Wise's Subject Pipe is "deliberate[ly,] regular[ly,] and recurrent[ly]" used for "the

17

disposal of unnatural volumes of stormwater runoff," which has caused the gradual deterioration of the Subject Pipe, erosion of the surrounding soil, and the development of a sinkhole — harms of which Wise became aware on or after June 27, 2016. In sum, Wise has alleged a nuisance that "will continue indefinitely," and because this alleged nuisance will continue indefinitely, Wise had the option either "to treat the nuisance as temporary and sue for all those damages which have occurred within the past four years," or to "elect to sue for all future damages as well and put an end to the matter." *Cox*, 239 Ga. at 129. And, here, Wise has elected to pursue the latter option and to sue both for those harms that occurred within the past four years, as well as all future harms, in one lawsuit. See id.

The Court of Appeals determined that Wise's inverse-condemnation-by-permanent-nuisance claim was barred because the only harm to Wise's property was the "alleged dramatic increase in stormwater runoff," which would have been "immediately

18

observable" to Wise in 2000 when the McFarland Parkway Project was completed. *Wise*, 363 Ga. App. at 328 (1). See also *Forrister*, 289 Ga. at 333 (2). However, this was not the only harm that Wise alleged, and Wise did not allege that it was observable to Wise in 2000. Wise alleged that there were three related harms resulting from the permanent nuisance: (1) increased stormwater runoff, which arguably began when the McFarland Parkway Project was completed, but was not visible to Wise; (2) a sinkhole, which appeared in Wise's parking lot in June 2016; and (3) erosion of the Subject Pipe and surrounding soil which Wise observed in September 2016. And, because the Court of Appeals was "reviewing an order on a motion to dismiss," it was required to "take the allegations in the complaint as true and resolve all doubts in favor of the [plaintiff]." *Norman v. Xytex Corp.*, 310 Ga. 127, 128 (1) (848 SE2d 835) (2020).

> [T]he well-established test that must be satisfied before a motion to dismiss can be granted is a demanding one: A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1)

19

the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In reviewing such a motion, any doubts regarding the complaint must be construed in favor of the plaintiff.

Id. at 130-131 (2) (citation, punctuation and footnote omitted).

The Court of Appeals erred in failing to accept as true — as it was required to do — Wise's allegations that the alleged harms were hidden from Wise's view (i.e., not observable) until Wise discovered the sinkhole on its property in 2016. See *Norman*, 310 Ga. at 131 (2). Accordingly, we conclude that the Court of Appeals erred in affirming the trial court's dismissal of Wise's inverse-condemnation-by-permanent-nuisance claim on the basis that this claim was barred by the statute of limitation under OCGA § 9-3-30 (a). Thus, we reverse the judgment of the Court of Appeals and remand the case to the Court of Appeals with direction to remand the case to the trial court to conduct further proceedings consistent with this opinion.

20

*Judgment reversed and case remanded with direction. All the Justices concur.*

Decided September 19, 2023 — Reconsideration denied November 7, 2023.

Certiorari to the Court of Appeals of Georgia — 363 Ga. App. 325.

*George E. Butler II*, for appellant.

*Jarrard & Davis, Christopher J. Hamilton, G. Aaron Meyer; Christopher M. Carr, Attorney General, Logan B. Winkles, Julie A. Jacobs, Deputy Attorneys General, Alkesh B. Patel, Senior Assistant Attorney General, Luther H. Beck, Jr., John H. Zwald, Mary Jo Volkert, Assistant Attorneys General*, for appellees.