A00A0084. R. D. STALLION CARPETS, INC. v. DORSETT INDUSTRIES, L.P.
(536 SE2d 523)

ANDREWS, Presiding Judge.

R. D. Stallion Carpets, Inc. (Stallion) obtained a judgment against Dorsett Automotive Carpet, L.P. f/k/a DWB Holding Carpet, L.P. When Stallion attempted to collect that judgment from Dorsett Industries, L.P., the limited partnership that purchased the assets of Dorsett Automotive Carpet, the trial court granted summary judgment. In this appeal, Stallion contends that material issues of disputed fact precluded that judgment. We agree and reverse.

In reviewing the grant of summary judgment as here, we apply a de novo standard of review and consider the evidence with all reasonable inferences and conclusions in favor of the party opposing summary judgment. *Gaskins v. Hand*, 219 Ga. App. 823, 824 (466 SE2d

688) (1996). So viewed, the evidence established that the evolution of Dorsett Industries was convoluted. In 1992, Robert S. Goodroe was the controlling stockholder and chief executive officer of Dorsett Carpet Mills, Inc. Sometime in 1992, DWB Carpet Holdings, L.P.[1] acquired Dorsett Carpet Mills from Goodroe and also acquired Whitecrest Carpet Mills, Inc. and Buck Creek Industries, Inc. Although DWB Carpet Holdings combined these three corporations, within a relatively short time period, this company spun off portions of itself and changed its name as set out below.

In April 1994, Stallion and DWB Carpet Holdings (DWB) agreed that DWB would manufacture certain carpets for Stallion. James Collins, the treasurer and chief financial officer of DWB at the time of the deal, testified that "[t]o allow Stallion to recoup its sampling costs, DWB agreed to manufacture the styles for a period of twelve months, after which the styles could be terminated with no liability to Stallion."

Dissatisfied with DWB's failure to keep the manufacturing agreement, in January 1995, Stallion submitted a chargeback to DWB. Less than a week later, DWB sold its commercial broadloom business to Whitecrest Dorsett Commercial, Inc. (Whitecrest Dorsett).[2] Robert M. Painter, the controller of Dorsett Industries and formerly the controller of Dorsett Automotive Carpet, testified that "because of the Stallion claim, I notified James Collins and David Turner of the potential for further claims and chargebacks from Stallion, and the Closing Agreement with Whitecrest Dorsett was changed to insulate DWB from further claims from Stallion." On January 13, 1995, DWB finalized the sale of Whitecrest Carpet Mills to Whitecrest Dorsett. After the acquisition, Collins became chief financial officer of Whitecrest Dorsett. Notwithstanding an alleged agreement between DWB and Whitecrest Dorsett to continue running the three carpet lines for Stallion, Whitecrest Dorsett terminated the production of two of the three styles.

After Stallion attempted to make a chargeback in an amount exceeding $14,000 against Whitecrest Dorsett for discontinuing the carpet, Ron Summey, the administrator of credit and claims for Sunrise Carpet Industries, Inc. and its affiliates, including Whitecrest Dorsett, responded. Summey testified he told Stallion's president

> he had a choice and that Stallion could either reverse the chargeback . . . and pay Whitecrest Dorsett $14,115.78, or

---

[1] Stallion filed suit against Dorsett Automotive Carpet, L.P. f/k/a DWB Holding Carpet, L.P., but Dorsett Industries refers to the company as DWB Carpet Holdings, L.P.

[2] DWB sold Whitecrest Carpet Mills to Whitecrest Dorsett Commercial, Inc. on January 13, 1995.

alternatively, Sunrise, Victory [Carpet Corporation] and Whitecrest Dorsett Commercial would refuse to process any further orders for Stallion.

Summey "further informed [the president of Stallion] that pending his company's decision, all shipments to Stallion from Sunrise and its affiliates would be put on hold."

More than a month after the sale of DWB's commercial broadloom division, on February 20, 1995, the credit manager of DWB notified Stallion, as a "Dorsett Customer," that: "We are in the process of de-factoring our accounts; more simply put Dorsett will be handling your account credit on a direct in-house basis starting immediately." This letter to Stallion was signed on behalf of "Dorsett Carpet Mills, Inc., Div. of DWB Carpet Holdings, L.P."; used the letterhead of "DWB Carpet Holdings"; and listed at the bottom of the page the names and addresses of: "Dorsett Automotive [illegible] Division," "Dorsett Commercial Carpet," and "Whitecrest Commercial Carpet." Dennis Cudd, the president of Stallion, testified that this letter meant that "all future payments by R. D. Stallion to Dorsett were to be made to DWB Carpet Holdings, LP rather than the factor of DWB."

Sometime in 1995, after the sale of Whitecrest Dorsett, DWB changed its name to Dorsett Automotive Carpet, L.P., a limited partnership which Goodroe organized. Painter, the controller of Dorsett Industries who had been controller of Dorsett Automotive Carpet until December 22, 1995, testified that:

After the sale of the commercial broadloom division, I continued as the Controller of DWB, although its only operating division was the automotive division. However, I also continued to monitor the claims submitted against pre-sale receivables of the commercial broadloom division, and in that capacity I again dealt with Stallion, after NationsBanc Commercial Corporation charged back $39,920.85 of Stallion accounts receivable . . . on March 9, 1995. After receiving that chargeback, I notified Stallion that the chargeback was wrongfully directed at DWB, since Whitecrest Dorsett had agreed to continue the [two discontinued lines] for at least twelve (12) months from their introduction, as set forth in Exhibit E. Stallion never made any written response to my letter with enclosure of April 20, 1995, although Nations-Banc Commercial Corporation refused to reverse the chargeback, and the account receivable from Stallion to DWB in the amount of $39,920.85 was written off as uncollectible on November 28, 1995. . . .

Most of the chargeback related to expenses incurred by Stallion as a consequence of the discontinuation of the carpet lines, "Sisal Weve" and "Au Sisal." Stallion further advised on the invoice that "[f]uture claims on Au Sisal and Sisal Weve will be debited as they occur."

Seeking damages for the discontinuation of the manufacture of the two carpet types, Stallion filed suit on October 3, 1995, against Dorsett Automotive Carpet, L.P. f/k/a DWB Holding Carpet, L.P. Dorsett Automotive Carpet answered and counterclaimed. In Paragraph 2 of its counterclaim, Dorsett Automotive Carpet stated, "The defendant manufactured and sold to the plaintiff [Stallion] certain carpet." Dorsett Automotive Carpet made a demand for defense against Whitecrest Dorsett and Sunrise Carpet Industries, an affiliate of Whitecrest Dorsett.

While Stallion's lawsuit was pending against it, Dorsett Automotive Carpet entered into an asset purchase agreement with Dorsett Industries as the buyer. Goodroe testified that he was the organizer of the new limited partnership. When Dorsett Automotive Carpet sold its assets to Dorsett Industries, Goodroe signed the closing documents and was the general partner and president of the newly created Dorsett Industries, L.P.

Paragraph 2.2 of the Asset Purchase Agreement provides in part, "Buyer [Dorsett Industries] agrees to assume all the Assumed Liabilities on the Closing Date. Buyer shall not be liable or obligated for any liabilities, other than the Assumed Liabilities." Paragraph 1.2 defined "Assumed Liabilities" to mean:

(a) all of Seller's known or should be known debts, liabilities or obligations of any nature whatsoever, incurred in connection with Seller's automotive carpet division, including without limitation all debts, liabilities and obligations of such division for . . . pending or threatened lawsuits, contracts, leases and commitments, . . . and (d) all obligations of Seller to Sunrise Carpet Industries, Inc., Whitecrest-Dorsett Commercial, Inc. and their affiliates.

On November 26, 1996, Stallion obtained a judgment against Dorsett Automotive Carpet f/k/a DWB Holding Carpet in the amount of $162,340.37 plus post-judgment interest and costs. In an effort to collect that judgment, Stallion filed suit against Dorsett Industries. Dorsett Industries denied any responsibility, claiming it had no liability for a judgment entered against Dorsett Automotive Carpet.

In answering Stallion's complaint, Dorsett Industries admitted that:

> On the date of Dorsett's assumption of liabilities of Dorsett Automotive, there was pending in the Superior Court of Whitfield County, Georgia a claim against Dorsett Automotive by Plaintiff in a case styled *R. D. Stallion Carpets, Inc. v. Dorsett Automotive Carpet, L.P., f/k/a D.W.B. Holding Carpet-D.W.B., L.P.*, Civil Action File No. 62, 778-J.

The record does not show that Dorsett Automotive pursued its demand for a defense by Whitecrest Dorsett or filed a third-party action against Whitecrest Dorsett.

In moving for summary judgment, Dorsett Industries contended that the $162,000 judgment was not an assumed liability under the terms of the asset purchase agreement and Stallion was not an intended third-party beneficiary of its contract with Dorsett Automotive Carpet.

In arguing that it bore no responsibility for the judgment, Dorsett Industries pointed out that DWB had different operating divisions. Dorsett Industries claimed, "[a]t all times, DWB's commercial broadloom division did business with Stallion under the tradestyle 'Whitecrest Carpet Mills.' At no time did Stallion ever conduct business with DWB's other operating division, Dorsett Automotive." Dorsett Industries argued that DWB's agreement with Stallion was strictly between Stallion and DWB's commercial broadloom division and did not involve the automotive operating division. Goodroe testified,

> The Original Litigation was not a "pending or threatened lawsuit" against the automotive division as defined in Subparagraph 1.2 (a), since the claim arose out of the commercial broadloom division which had been sold to Whitecrest Dorsett, and was not assumed by Dorsett Industries, L.P.

The trial court determined that Stallion was not an intended third-party beneficiary of the asset purchase agreement between Dorsett Automotive Carpet and Dorsett Industries. The court observed, "it was Whitecrest who had committed the alleged breach." Finding no evidence that Stallion had ever done business with the automotive division, the trial court granted summary judgment to Dorsett Industries.

Stallion contends that disputed issues of material fact precluded summary judgment. Stallion claims that Dorsett Automotive Carpet's statement in its counterclaim that it "manufactured and sold to the Plaintiff [Stallion] certain carpet," constituted an admission in judicio.

Relying on that statement, Stallion asserts that a jury must decide whether Dorsett Automotive Carpet manufactured and sold goods to Stallion. See *Wilson v. Ortiz*, 232 Ga. App. 191, 197 (501 SE2d 247) (1998). We agree.

OCGA § 24-3-30 provides "[w]ithout offering the same in evidence, either party may avail himself of allegations or admissions made in the pleadings of the other." Further,

> [a]dmissions contained in a stricken plea may be introduced in evidence by the opposite party. Such admissions when thus made are to be taken as true, because they are asserted by the party himself; and while the party may withdraw them formally from the pleadings, he can not by a mere withdrawal avoid the effect of the admissions, since they may still be used as evidence against him. (Cit.)

(Punctuation omitted.) *Wilson*, supra, 232 Ga. App. at 197.

> Although a party may withdraw or strike from the pleadings an admission in judicio by amendment and tender evidence to contravene such admission, the opposite party can tender in evidence the original admission in judicio against such party as an admission against interest. [Cits.]

*Wahnschaff v. Erdman*, 232 Ga. App. 77, 78-79 (1) (502 SE2d 246) (1998). Even after its withdrawal, an opposing party "undeniably [has] a right to use it as evidence." *Stallings v. Britt*, 204 Ga. 250, 254 (2) (49 SE2d 517) (1948).

Thus, even assuming that "DWB withdrew its answer to the Original Litigation on November 25, 1996," as Goodroe testified, Stallion was entitled to use that evidence as an admission against interest since it was an admission of fact and not a legal conclusion or an opinion. Compare *Wahnschaff*, 232 Ga. App. at 79-80 (2). When admissions in judicio are expressly withdrawn, such pleadings may still be treated as admissions, but "the party making such admissions is now allowed to tender conflicting evidence." *Aycock v. Calk*, 228 Ga. App. 172, 173 (491 SE2d 383) (1997). Although Dorsett Industries offered testimony that at the time of the asset purchase agreement, it had no intention of assuming liability for Stallion's claims, we cannot say that such testimony would necessarily end the matter. See *Bullington v. Union Tool Corp.*, 254 Ga. 283, 284 (328 SE2d 726) (1985) (purchasing corporation does not generally assume the liabilities of the seller unless: (1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the purchaser is a mere continuation of the predecessor corporation). "In

Georgia, the common law continuation theory has been applied where there was some identity of ownership." Id. See *Ney-Copeland & Assoc. v. Tag Poly Bags*, 154 Ga. App. 256 (267 SE2d 862) (1980); *Johnson-Battle Lumber Co. v. Emanuel Lumber Co.*, 33 Ga. App. 517 (126 SE 861) (1925); see *Pet Care Professional Center v. BellSouth Advertising &c. Corp.*, 219 Ga. App. 117, 119 (1) (464 SE2d 249) (1995).

Dorsett Industries argues that Stallion should have presented invoices and other documentation to prove it purchased carpet from DWB's automotive division. But the gravamen of Stallion's complaint is that this carpet was not manufactured at all, despite DWB's agreement to continue production of the three styles for a year. Moreover, the documentation shows that after Stallion directed a chargeback for $39,920.85 against DWB, NationsBanc Credit refused to reverse the chargeback and DWB wrote the amount off as uncollectible. Why NationsBanc Credit refused to reverse the chargeback and why DWB elected to consider the amount uncollectible cannot be reconciled with the position that the automotive division of DWB was entirely separate and distinct from the broadloom division.

The crucial rule of summary judgment procedure is that a trial court cannot resolve facts or reconcile issues but can only ascertain if a material factual issue remains in dispute. *Bagley v. Firestone Tire &c. Co.*, 104 Ga. App. 736, 739 (123 SE2d 179) (1961). In light of the conflicting evidence created by the admission against interest, the evidence that the manufacturing agreement was already being breached at the time DWB sold its commercial broadloom business to Whitecrest Dorsett, evidence that DWB was collecting payments on behalf of Whitecrest Carpet after it had sold the broadloom division, and evidence of the apparent overlapping ownership and operation among DWB, Dorsett Automotive Carpet, Whitecrest Dorsett, and Dorsett Industries, it was error to grant summary judgment to Dorsett Industries.[3] *Strozier v. Simmons U.S.A. Corp.*, 192 Ga. App. 601, 603 (385 SE2d 677) (1989); see *Johnson-Battle Lumber Co.*, supra, 33 Ga. App. at 517.

*Judgment reversed. Ruffin and Ellington, JJ., concur.*

---

[3] In its summary judgment order, the trial court stated, "Obviously, Stallion had to sue Dorsett Automotive Carpet L.P. f/k/a DWB Holding Carpet, L.P. in order to sue the proper party in interest." But, if Dorsett Automotive Carpet was the proper defendant it would seem incongruous to find as a matter of law as the trial court did here that Stallion could not recover because "there is no evidence that Stallion ever did any business with the automotive division of DWB or Dorsett Industries."

DECIDED JUNE 13, 2000 —
RECONSIDERATION DENIED JUNE 30, 2000 ▮▮▮▮▮▮▮

*Minor, Bell & Neal, James H. Bisson III, Robert G. McCurry*, for appellant.

*Kinney, Kemp, Sponcler, Joiner & Tharpe, L. Hugh Kemp, Hine & Niedrach, Edward Hine, Jr., Erin M. Richardson*, for appellee.