**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**March 20, 2013**

# In the Court of Appeals of Georgia

A12A2168. FLOYD COUNTY v. SCOTT, et al.          DO-099

DOYLE, Presiding Judge.

George and Carol Scott sued Floyd County ("the County"), alleging a variety of claims based on the County's installation of drain pipe and drainage tie-in on nearby property, which work resulted in repeated flooding on their property. The trial court granted summary judgment to the County on each of the Scotts' claims, with the exception of their nuisance claim. In this interlocutory appeal, the County argues (1) that the Scotts' nuisance claim is barred by the statute of limitations; (2) that the trial court erred by determining that a reasonable juror could find that the County created a nuisance; and (3) that the Scotts' ante litem notice to the County was insufficient. We reverse, for the reasons that follow.

In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment, the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

So viewed, the record shows that the Scotts owned property in a residential subdivision in Rome, Georgia, next door to Geoffrey and Kimberly Wright; both properties bordered East Camelia Road. For decades, water in the subdivision naturally flowed either through a ditch under East Camelia Road or, during heavy rain events, across the road; it then flowed through a wide drainage ditch in the Wrights' side and back yards, across undeveloped property adjoining both the Wrights' and Scotts' properties, and into a nearby agricultural pond.

In 1999, in an effort to allow them to use their backyard, the Wrights installed an underground pipe, which extended from their property line, ran under their backyard, and ended and drained at the property line between the Wrights' and

---

[1] (Punctuation omitted.) *Columbus v. Cielinski*, ___ Ga. App. ___, ___ (734 SE2d 922) (2012).

2

Scotts' properties. In 2002, the Scotts purchased the undeveloped property adjoining their property and the Wrights' property. In August 2003, the County installed an additional pipe under East Camelia Road, adjacent to the pre-existing pipe under the road for the purpose of diverting more water under the road, instead of over it . The County also constructed a drainage tie-in, which connected the two pipes to the Wrights' pipe (hereinafter, we collectively refer to the installation of the additional pipe and the drainage tie-in as "the 2003 work").

In February 2011, the Scotts sued the County and the Wrights for damages allegedly arising out of flooding of the undeveloped property that the Scotts acquired in 2002. In their complaint, the Scotts alleged that "[b]eginning with the first significant rainfall event following the Wrights' construction of the underground drainage culvert and Floyd County's tie[-in] into the underground drainage culvert," the Scotts observed increased water from the Wrights' property flowing onto the Scotts' property, resulting in "extensive flooding." Consistent with these allegations, Carol Scott testified at deposition that she knew "there was water" on the undeveloped property before 2009 when it rained, "but it got really bad in 2009. That

is when my trees started falling, earth, roots, and all."[2] The day after Carol's deposition, the Scotts amended their complaint[3] specifically denying that they experienced flooding on their property prior to 2009, in contradiction to their original complaint and Carol's testimony. Instead, the Scotts based their nuisance claim on allegations that the harm to their property began in 2009, when trees began falling because their root structures were rotted by the flooding caused by the 2003 work.

The County and the Wrights filed motions for summary judgment. Following oral argument, the trial court granted summary judgment to the Wrights.[4] The trial court also granted partial summary judgment to the County, concluding that the Scotts' nuisance claim[5] remained viable and was not barred by the statute of

---

[2] The Scotts also submitted Carol's affidavit, in which she avers that a Floyd County Extension Office employee inspected the property at issue and informed her "that the trees were falling because they were rotten and waterlogged, due to the flooding and *standing water* on the [p]roperty" and that clearing the trees from the property would "dry up the *standing water*." (emphasis supplied).

[3] In the amended complaint, the Scotts alleged continuing nuisance and trespass claims against both the County and the Wrights, as well as negligence and inverse condemnation claims against the County.

[4] The grant of summary judgment to the Wrights is not at issue in this appeal.

[5] Although arising out of an alleged nuisance, the Scotts' claim is technically one for inverse condemnation. "A county may be liable for damages if it creates a condition on private property, such as a nuisance, that amounts to inverse condemnation or a taking

4

limitations.[6] The trial court ruled that a jury must decide "whether the 2003 work by the County in rerouting the storm water under Camelia Road and into a pipe that ultimately spilled the water out onto [the Scotts'] property increased the quantity or flow of the water causing damage to" the Scotts' land.

1. The County argues that the Scotts' nuisance claim is barred by the statute of limitations. We agree.

OCGA § 9-3-30 (a) establishes a four-year statute of limitations for actions for trespass upon or damage to realty. "Generally, whether a nuisance is deemed to be continuing or permanent in nature determines the manner in which the statute of limitations will be applied."[7] Here, the trial court found that the alleged nuisance was permanent and was not an abatable nuisance such that every continuance of the

_____

without compensation." *Stanfield v. Glynn County*, 280 Ga. 785, 786 (1) (631 SE2d 374) (2006) (punctuation omitted). The parties do not contend, however, that this is relevant to the statute of limitations analysis.

[6] Specifically, the trial court found that: "[T]he water has always flowed across the Scott[s'] property. The water continued to flow across their property after [the County] did its work in 2003. There was no way an increase in flow (if there had been such) could be observed by the Plaintiffs. The harm in this case did not become observable until the trees started falling and Mrs. Scott had someone come look at them in 2009."

[7] (Punctuation omitted.) *Oglethorpe Power Corp. v. Forrister*, 289 Ga. 331, 333 (2) (711 SE2d 641) (2011).

nuisance gave rise to a fresh cause of action, and the parties do not challenge this ruling.

"A nuisance, permanent and continuing in its character, the destruction or damage being at once complete upon the completion of the act by which the nuisance is created, gives but one right of action, which accrues immediately upon the creation of the nuisance, and against which the statute of limitations begins, from that time, to run."[8] In cases of permanent nuisance, "a plaintiff is allowed only one cause of action to recover damages for past and future harm. *The statute of limitation begins to run against such a claim upon the creation of the nuisance once some portion of the harm becomes observable.*"[9]

Thus, as applied to this case, "the [Scotts'] action would be barred because they did not file their lawsuit until [eight] years after the [County's 2003 work] became operational – unless some new harm that was not previously observable occurred

---

[8] (Punctuation omitted; emphasis supplied.) *City of Atlanta v. Kleber*, 285 Ga. 413, 416 (677 SE2d 134) (2009).

[9] (Emphasis supplied.) *Oglethorpe Power Corp.*, 289 Ga. at 333 (2), quoting Restatement (Second) of Torts § 899, cmt. d) ("In some cases, however, in which the defendant has done an act that may have a permanent injurious effect, but when the effect is problematical and no harm is observable, the statute does not begin to run until some portion of the harm becomes observable.").

6

within the four years preceding the filing of their cause of action in [2011]."[10] For this purpose, a change in degree of harm does not restart the limitations period. "If a plaintiff could sue a public utility each time the harm resulting from a permanent nuisance changed by degree, the rule requiring a plaintiff to bring one lawsuit for past and future damages within the applicable statute of limitation would be meaningless."[11]

The Scotts allege that "the discharge of water from Floyd County's drainage tie[-in] into the Wrights' underground drainage pipe has caused flooding and water damage to the Scott[s' p]roperty." The Scotts admitted in their initial complaint that they observed extensive flooding on their property "[b]eginning with the first significant rainfall event" following the 2003 work. Although they subsequently amended their complaint to deny that the property experienced flooding prior to 2009, their original admission can be construed as an admission against interest.[12] This admission, combined with Carol's deposition testimony that she observed water on

---

[10] *Oglethorpe Power Corp.*, 289 Ga. at 336 (3).

[11] Id. at 337 (3).

[12] See *R. D. Stallion Carpets, Inc. v. Dorsett Indus., L.P.*, 244 Ga. App. 719, 724 (536 SE2d 523) (2000).

7

the property before 2009 and her affidavit containing the explanation from the county employee that the trees were damaged by standing water, we conclude that the Scotts' claim accrued long before they discovered trees falling on their property in 2009[13] and more than four years before they filed their initial complaint in 2011. The trial court erred by denying the County's motion for summary judgment in its entirety.[14]

2. Based on our holding in Division 1, we need not address the County's remaining enumerations.

*Judgment reversed. Andrews, P. J. and Boggs, J., concur.*

---

[13] The Scotts' apparent contention that the damage to the trees constituted "new harm" is without merit. The purported harm to their property was the increased flooding, which then allegedly resulted in damage to the trees.

[14] See *Oglethorpe Power Corp.*, 289 Ga. at 336 (3).