**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 15, 2022**

# In the Court of Appeals of Georgia

A21A1459. WISE BUSINESS FORMS INC. v. FORSYTH
     COUNTY et al.;
A21A1460. FORSYTH COUNTY v. WISE BUSINESS FORMS,
     INC.

REESE, Judge.

Wise Business Forms Inc. ("Wise") filed suit against Forsyth County and the Georgia Department of Transportation ("GDOT") (collectively, "the Appellees") alleging per se taking and inverse condemnation in that the expansion of McFarland Road increased the surface and stormwater runoff flowing under Wise's property, which created a sinkhole in its parking lot. Forsyth County and the GDOT filed motions to dismiss, which the trial court granted. Wise appeals the trial court's ruling. Additionally, although Forsyth County agrees with the trial court's dismissal of Wise's complaint, it appeals the court's ruling that the statute of limitation for Wise's

claim for inverse condemnation by permanent nuisance began when Wise observed the sinkhole rather than when the Appellees' construction project was completed. For the reasons set forth infra, we affirm the trial court's dismissal of the Appellees' motions to dismiss, and dismiss as moot the cross-appeal.

We review a trial court's ruling on a motion to dismiss de novo, "treating all material allegations set forth in the complaint as true, treating all denials set forth in the answer as false, and resolving any doubts in favor of the plaintiff."[1] So viewed, the record shows the following. Wise is the nation's fourth largest printer of business forms, and is headquartered in Forsyth County. The property used for its headquarters was purchased in three separate acquisitions beginning in 1984 and running through 1996.

A 36-inch metal pipe ("Subject Pipe") runs underneath Wise's property and has been in place since 1985. Approximately twenty-five feet of the drainage pipe extends into a two-acre tract of land west of Wise's property ("Corner Tract"). The Corner Tract is undeveloped and forms a natural detention basin into which a large vertical concrete drainage structure with a large stormwater outlet pipe ("Feeder Structure") was constructed. Wise asserted in its complaint that water from the Feeder Structure

---

[1] *Campbell v. Ailion*, 338 Ga. App. 382, 383 (790 SE2d 68) (2016).

on the Corner Tract was designed to flow through the Subject Pipe underneath Wise's property.

The McFarland Parkway Widening Project ("McFarland Parkway Project") extended McFarland Road from two lanes to four lanes and was completed in 2000. Wise alleged in its complaint that this project resulted in a substantial increase of the surface and stormwater runoff flowing underneath its property. Specifically, Wise asserted that as part of the project the Appellees designed and installed a sophisticated stormwater drainage system, while failing to provide detention facilities to mitigate the increased runoff, and that the drainage system ultimately channeled water to the Corner Tract and subsequently through the Subject Pipe running underneath Wise's property.

On June 27, 2016, Wise noticed the first signs of a sinkhole on its property. Wise subsequently conducted a test to determine the origin of the majority of water flowing through the Subject Pipe. Wise asserted that by tracking marked ping pong balls through the drainage system, it was able to determine that the "bulk of the stormwater" that flowed through the Subject Pipe derived from the catch basins and storm sewers built as part of the McFarland Parkway Project. Wise also had the

3

Subject Pipe inspected using a robotic vehicle and discovered deterioration and erosion within the pipe.

Wise sued Forsyth County and the GDOT asserting claims for per se taking and damaging Wise's property, inverse condemnation by abatable nuisance, inverse condemnation by permanent nuisance, attorney fees, and violation of 42 USC § 1983. Wise appeals from the trial court's order granting the Appellees' motions to dismiss, and Forsyth County filed a cross-appeal.

"We apply a de novo standard of review to the trial court's grant of a motion to dismiss. A motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his claim."[2] With these guiding principles in mind, we now turn to the parties' claims of error.

---

[2] *Ga. Interlocal Risk Mgmt. Agency v. City of Sandy Springs*, 337 Ga. App. 340, 342 (788 SE2d 74) (2016) (citation and punctuation omitted).

1. Wise argues that the trial court erred by dismissing its claim for inverse condemnation by permanent nuisance due to its failure to attach an expert affidavit to its complaint. Although we agree with Wise that the trial court erred in finding that Wise's complaint required an expert affidavit pursuant to OCGA § 9-11-9.1, we affirm the court's ruling to dismiss Wise's claim on other grounds.[3]

OCGA § 9-11-9.1 (a) (1) requires plaintiffs to file an expert affidavit in "any action for damages alleging professional malpractice" against professionals licensed by the State of Georgia, including professional engineers.[4] The Supreme Court of Georgia has also stated that "OCGA § 9–11–9.1, by its very language, is applicable only to those professional malpractice actions alleging professional negligence. . . . Those claims grounded on a professional's intentional acts . . . are not required to be accompanied by an expert affidavit."[5] As Wise's inverse condemnation claim is

---

[3] See *Estate of Nixon v. Barber*, 340 Ga. App. 103, 105 (1) (796 SE2d 489) (2017) (affirming grant of motion to dismiss under "right for any reason" doctrine).

[4] See OCGA § 9-11-9.1 (g) (21) (listing professional engineers as a category to which the code section applies).

[5] *Labovitz v. Hopkinson*, 271 Ga. 330, 335-337 (3) (519 SE2d 672) (1999).

5

premised on the Appellees' intentional acts giving rise to an alleged nuisance, and does not assert claims of negligence, "the requirement of OCGA § 9-11-9.1 to file an expert affidavit when a claim alleges damages for professional negligence is inapposite here."[6]

However, Wise's claim was nonetheless properly dismissed as it was barred by the four-year statute of limitation. "Inverse condemnation claims based on . . . nuisance are subject to a four-year statute of limitation."[7] In claims for permanent nuisances, "a plaintiff is allowed only one cause of action to recover damages for past and future harm. The statute of limitation begins to run against such a claim upon the creation of the nuisance once some portion of the harm becomes observable[,]"[8] "unless some new harm that was not previously observable occurred within the four years preceding the filing of [the plaintiff's] cause of action[.]"[9]

---

[6] *Dept. of Transp. v. Mixon*, 355 Ga. App. 463, 468 (4) (844 SE2d 524) (2020).

[7] *Liberty County v. Eller*, 327 Ga. App. 770, 772 (2) (761 SE2d 164) (2014).

[8] *Oglethorpe Power Corp. v. Forrister*, 289 Ga. 331, 333 (2) (711 SE2d 641) (2011).

[9] *Floyd County v. Scott*, 320 Ga. App. 549, 552 (1) (740 SE2d 277) (2013) (punctuation and footnote omitted).

Here, Wise asserted in its complaint that the Appellees "dramatically increased the amount of runoff water" leaving McFarland Parkway, and this runoff was then directed into the Feeder Structure. Therefore, the nuisance itself stemmed from the completion of the McFarland Parkway Project.[10] Moreover, the construction of the storm water drainage system by the Appellees to divert this increased storm water runoff through the Subject Pipe, and the alleged dramatic increase in stormwater runoff being driven into the Feeder Structure, would have been observable.[11] Thus, as a permanent nuisance which had some portion of the harm immediately observable, the statute of limitation began in 2000 when the McFarland Parkway Project was complete.[12]

Further, the fact that the sinkhole appeared approximately 20 years after the initial harm of increased runoff flowing under Wise's property did not constitute new harm sufficient to toll the statute of limitation.[13] As noted above, the harm in the

---

[10] See *Oglethorpe Power Corp.*, 289 Ga. at 333 (2).

[11] See id.; see also *Eller*, 327 Ga. App. at 773-774 (2).

[12] See *Oglethorpe Power Corp.*, 289 Ga. at 333 (2).

[13] See *Floyd County v. Scott*, 320 Ga. App. 549, 552 (1) (740 SE2d 277) (2013) (holding that the landowners' claim accrued after the county's work became operational and discharged water onto their property, and not once trees fell due to

present case was an increase in runoff resulting from the completion of the McFarland Parkway Project.[14] "If a plaintiff could sue a public utility each time the harm resulting from a permanent nuisance changed by degree, the rule requiring a plaintiff to bring one lawsuit for past and future damages within the applicable statute of limitation would be meaningless."[15] Likewise, the fact that Wise claims it did not know about the increased stormwater runoff is insufficient to toll the statute of limitation as "the issue is whether *some new harm* that was not previously observable *occurred* in the four years prior to . . . when the complaint was filed."[16] As Wise does not assert that this harm increased or changed subsequent to the completion of the McFarland Parkway Project, the statute of limitation was not tolled by a new harm.[17]

---

damage sustained due to this discharge of water).

[14] Id.

[15] Id. (punctuation and footnote omitted).

[16] *Eller*, 327 Ga. App. at 774 (2).

[17] See *Eller*, 327 Ga. App. at 774 (2); see also *Stroud v. Hall County*, 339 Ga. App. 37, 43 n. 4 (3) (793 SE2d 104) (2016) (stating that increase of flooding was not a new harm as the nature of the alleged harm experienced, i.e., flooding, remained the same over time).

Thus, although we reach this conclusion through different reasoning than that relied upon by the trial court, we affirm the court's dismissal of Wise's claim.[18]

2. Wise argues that the trial court erred in dismissing Wise's claim for inverse condemnation based on a continuing or abatable nuisance.

A claim based on an abatable nuisance requires one to "establish that the [Appellees] maintain[ed] the system or that the [Appellees'] actions in regard to the storm drainage system constituted such exercise of control or acceptance so as to establish a duty on the part of the [Appellees] to adequately maintain it."[19] In the present case, Wise only alleged in its complaint that the Appellees knew of the location of the Subject Pipe based on the County's Stormwater Pipe and Basin Map, and did not assert that they accepted a duty to maintain it. Further, although Wise asserted that the Subject Pipe was a de facto critical part of the McFarland Parkway Project, we are "not required to accept or adopt a party's legal conclusions, no matter how 'well-pled' the facts."[20] Thus, Wise failed to allege facts demonstrating that the

---

[18] See *Estate of Nixon*, 340 Ga. App. at 105 (1).

[19] *Klingensmith v. Long County*, 352 Ga. App. 21, 27 (2) (b) (833 SE2d 608) (2019) (punctuation omitted).

[20] *NKN Enterprises v. Branch Banking & Trust Co*., 335 Ga. App. 70, 72 (780 SE2d 777) (2015) (citation and punctuation omitted).

9

Appellees had a duty to maintain the Subject Pipe, as required for a claim of abatable nuisance.

However, even assuming arguendo that Wise adequately asserted that the Appellees had a duty to maintain the Subject Pipe, his claim actually centered on a permanent, rather than an abatable nuisance, and as discussed in Division 1, supra, it is barred by the statute of limitation. "[T]he classification of a nuisance as continuing or permanent directly controls the manner in which the statute of limitations will be applied to the underlying claim."[21] "If a nuisance is created by some substantial and relatively enduring feature of the plan of construction or from an essential method of operation of some infrastructure employed in necessary public service, then it will usually not be abatable by injunction."[22] Likewise, "[i]f a nuisance is not abatable, it is considered permanent[.]"[23]

Here, Wise alleged that the nuisance stemmed from the expansion of McFarland Road, which included the design and installation of a storm water drainage system and the decision not to build detention facilities to address the

---

[21] *City of Atlanta v. Carisle*, 359 Ga. App. 444 (858 SE2d 543) (2021).

[22] *Stroud*, 339 Ga. App. at 42 (3) (citations and punctuation omitted).

[23] Id. at 42 (3).

alleged increased runoff. As these constitute enduring features of the construction project, Wise's claim is based on a permanent, rather than an abatable, nuisance, and as discussed above, is barred by the four-year statute of limitation.[24]

3. Although Wise initially argued that the trial court erred in ruling that its per se taking claim was barred by the four-year statute of limitation, it subsequently stated that "for purposes of its Consolidated Reply Brief [Wise was] abandoning its 'per se' taking claim . . . while pointing out . . . that its previous 'accrual' analysis [was] directly relevant to the legal issues underlying [Wise's claims for permanent and abatable nuisance]." Even assuming that Wise's claim was not abandoned, we conclude that the trial court did not err in dismissing its per se taking claim.

A "cause of action upon [taking] accrue[s] immediately upon the installation of the public works involved[,]" and is subject to a four-year statute of limitation.[25] Because the McFarland Parkway Project was completed in 2000, the statute of limitation for Wise's taking claim, as with its permanent nuisance claim, accrued

---

[24] See *Stroud*, 339 Ga. App. at 42 (3).

[25] *Mitchell v. City of Atlanta*, 217 Ga. 202, 203 (1) (121 SE2d 764) (1961) (punctuation omitted); accord *Robinson v. Dept. of Transp.*, 195 Ga. App. 594 (394 SE2d 590) (1990).

upon completion of the public parkway, and thus, Wise's claim was untimely.[26]

Additionally, although Wise's claim was for per se taking, its arguments regarding why the trial court erred in ruling that the statute of limitation was not tolled until its discovery of the sinkhole centered on the same permanent nuisance analysis discussed in Division 1, supra. Therefore, as we stated above, the fact that Wise alleges that it did not know about the increased stormwater runoff is not sufficient to toll the statute of limitation.[27] Wise did not claim that the alleged harm itself, i.e., the runoff, changed since the completion of the McFarland Parkway Project, thus, there was no "new harm" that would have tolled the statute of limitation.[28]

4. In light of our rulings in Divisions 1 through 3, supra, we need not consider the remainder of Wise's claims of error.

---

[26] See *Mitchell*, 217 Ga. at 203 (1); see also *Oglethorpe Power Corp.*, 289 Ga. at 333 (2) ("The statute of limitation begins to run against [a permanent nuisance claim] upon the creation of the nuisance once some portion of the harm becomes observable.").

[27] See *Eller*, 327 Ga. App. at 774 (2); see also *Mitchell*, 217 Ga. at 204 (2) ("Mere ignorance of facts constituting a cause of action does not prevent the running of the statute of limitations.").

[28] See *Eller*, 327 Ga. App. at 774 (2); see also *Stroud*, 339 Ga. App. at 43 n. 4 (3) (793 SE2d 104) (2016).

5. In light of our ruling in Division 1, supra, Forsyth County's cross-appeal is moot, and therefore is dismissed.[29]

*Judgment affirmed in Case No. A21A1459. Appeal dismissed in Case No. A21A1460. Doyle, P. J., and Brown, J., concur.*

---

[29] See *Baker Mtg. Corp. v. Hugenberg*, 145 Ga. App. 528, 529 (2) (244 SE2d 56) (1978).